MATTER OF NIAYESH

In Exclusion Proceedings

A-23097591

*Decided by Board January 16, 1980*

(1) The immigration judge did not abuse his discretion in finding the nonimmigrant student excludable under section 212(a)(20) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(20), where the applicant attempted to enter the United States and return to full-time employment by presenting a student visa.

(2) The District Director has exclusive jurisdiction to parole an alien into the United States pursuant to 8 C.F.R. 212.5(a).

(3) An alien who is paroled into the United States is not subject to a deportation proceeding.

(4) Pursuant to 8 C.F.R. 108.1, the American Consul has exclusive authority to review an asylum request made by an alien seeking entry at a land border port.

EXCLUDABLE:
   Order:   Act of 1952—Sec. 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant—no valid
                        immigrant visa

ON BEHALF OF APPLICANT:                    ON BEHALF OF SERVICE:
   Steven D. Karp, Esquire                     Harold J. Neubauer
   8484 Wilshire Blvd., #730                   Trial Attorney
   Beverly Hills, California   90211

BY:   Milhollan, Chairman; Maniatis, Appleman, and Maguire, Board Members. Dissenting Opinion, Farb, Board Member

   In a decision dated August 29, 1979, the immigration judge found the applicant excludable under section 212(a)(20) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(20), as an immigrant who at the time of application for admission was not in possession of a valid unexpired immigrant visa. The applicant was ordered excluded and deported from the United States. The applicant has appealed. The appeal will be dismissed.

   The applicant is a 20-year-old native and citizen of Iran. He was admitted to the United States on March 24, 1978, as a nonimmigrant student to attend the University of Tennessee. On or about January 5, 1979, the applicant moved from Tennessee to Los Angeles, California,

and accepted full-time employment as a machinist. He allegedly only moved and became employed because he was no longer able to receive money from Iran to attend college (Tr. p. 7). Further, he stated that the state colleges in California could not place him until the spring of 1980 (Tr. p. 11).

On August 12, 1979, the applicant and some friends visited Tijuana, Mexico. In attempting to return to the United States, the applicant was refused admission by an immigration officer in San Ysidro, California, for presenting a student visa when employed full time as a machinist. The immigration officer cancelled the applicant's student visa, finding that he was no longer a bona fide nonimmigrant student.[1] The applicant testified that he was told to go back to the American Consulate in Mexico and obtain another visa (Tr. p. 16). Apparently, the Consul refused the applicant's request. An exclusion hearing was held on August 29, 1979, in San Ysidro, California.

On appeal, the applicant, through his attorney of record, argues that 1) the decision of the immigration judge, denying the applicant entry into the United States and finding him excludable and deportable, was arbitrary and capricious in that the applicant was admissible and entry should have been granted by the immigration judge in exercise of his administrative discretion; 2) should there have been a question as to the applicant's student visa, the applicant should have been paroled into the United States and set up for a deportation proceeding in that the applicant's departure was brief, innocent, and casual under *Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963); 3) the applicant should have been paroled into the United States in order to apply for political asylum in that the applicant would be willing to demonstrate his unwillingness to return to Iran because of the current unsettled conditions there; and 4) the applicant should have been allowed to submit an application for political asylum at the exclusion proceeding as provided in the new amendments to the Code of Federal Regulations.

An immigration judge's authority in exclusion proceedings in set forth as follows in 8 C.F.R. 236.1:

> In determining cases referred for further inquiry as provided in section 235 of the Act, immigration judges shall have the powers and authority conferred upon them by the Act and this chapter. Subject to any specific limitation prescribed by the Act and this chapter, immigration judges *shall* also *exercise the discretion and authority* conferred upon the Attorney General by the Act *as is appropriate and necessary for the disposition of such cases.* (Emphasis added.)

A "nonimmigrant student" is defined by the Act as an alien having a

---

[1] This statement was striken from the applicant's Notice of Visa Cancellation/Border Crossing Card, Form I-275, for the purpose of the applicant's exclusion hearing. The applicant had requested the individual who prepared the form to appear at the hearing for cross-examination and he was unable to do so.

residence in a foreign country which he has no intention of abandoning, who is a bona fide student, and who is coming temporarily to the United States to study. Section 101(a)(15)(F) of the Act, 8 U.S.C. 1101(a)(15)(F).

Pursuant to 8 C.F.R. 3.1(b)(1), the Board may consider an appeal from an immigration judge in an exclusion proceeding.

At the time the applicant applied for admission to return to the United States, he was working full time in Los Angeles (Tr. p. 10). He testified at the exclusion proceeding that although he never intended to leave school, he did so in order to support himself as of January 1, 1979, when he failed to receive money from Iran (Tr. p. 17, 18). He admitted that he never went to the Service to seek permission to work at any time (Tr. p. 7). On August 12, 1979, he attempted to return to the United States to a full-time job by presenting a student visa. Inasmuch as the applicant was without a valid visa as required by section 212(a)(20), the immigration officer cancelled the visa pursuant to the applicant's withdrawal of his application for admission.[2] 22 C.F.R. 41.122(e)(3). We are convinced that the applicant was excludable under section 212(a)(20), and the immigration judge did not abuse his discretion in so finding.

Insofar as the applicant's contention that the immigration judge failed to comply with Commissioner Castillo's memorandum of March 1, 1979, instructing all field offices to give sympathetic consideration to all Iranian students, we find that the instruction does not preclude the immigration judge from disposing of an exclusion case in a manner which he feels is appropriate.[3]

In response to the applicant's second argument, the District Director has exclusive jurisdiction to parole an alien into the United States pursuant to 8 C.F.R. 212.5(a). Both the immigration judge and the Board lack jurisdiction to exercise parole power. *Matter of Lepofsky*, 14 I&N Dec. 718 (BIA 1974); *Matter of Conceiro*, 14 I&N Dec. 278 (BIA 1973), *aff'd, Conceiro v. Marks*, 360 F.Supp. 454 (S.D.N.Y. 1973).

In the alternative, even if the applicant had been paroled, he would not necessarily have been "set up for a deportation hearing" or admissible under the "*Fleuti* doctrine", as the applicant would have us believe. An alien may be paroled into the United States temporarily pending a final determination of admissibility in accordance with

---

[2] The applicant, through his attorney of record, alleged at the exclusion hearing that the applicant withdrew his application for admission unintelligently and in response to coercion and duress exerted by the Service (Tr. p. 3). On appeal, however, the applicant has failed to raise the issue. Consequently, it would be inappropriate to discuss the propriety of such action on the part of the Service or its effect on the proceedings at this time.

[3] In a wire dated November 13, 1979, the memorandum was withdrawn.

sections 235 and 236 of the Act, 8 U.S.C. 1225 and 1226. *See generally,* 8 C.F.R. 212.5(a). Further, being "set up for a deportation proceeding" would not have guaranteed the applicant relief from deportation.

The applicant, a nonimmigrant student returning from a two-hour visit in Mexico, was not an alien lawfully admitted for permanent residence returning to an unrelinquished domicile, or a person whose deportation would have resulted in extreme hardship to himself, his spouse, or child who is a citizen of the United States. *See generally Rosenberg v. Fleuti, supra; Wadman v. INS,* 329 F.2d 812 (9 Cir. 1964).

In response to the applicant's third and fourth arguments, 8 C.F.R. 108.1 clearly provides that the American Consul has exclusive authority to review an asylum request made by an alien seeking entry at a land border port. Consequently, the immigration judge in an exclusion proceeding in San Ysidro, California, has no authority to review an applicant's asylum claim, whether or not the applicant is in possession of a visa. *See generally* 44 Fed. Reg. 21253 (1979).

We are in complete agreement with the immigration judge's findings. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

DISSENTING OPINION:  Ralph Farb, Board Member

I dissent from so much of the Board's decision as holds that the applicant may not prosecute his application for political asylum in this exclusion proceeding. I agree that he is not admissible as a returning nonimmigrant student following his two-hour departure to Mexico because he lost that status by dropping out of school and by taking unauthorized employment in the United States. Accordingly, it is correct to declare him excludable as an immigrant without an immigrant visa.

8 C.F.R. 108.1 states, both before and after its amendment effective May 10, 1979, that an applicant for asylum who appears at a land border port is to be referred to the nearest American Consul. New in this version of the regulation, and in new section 236.3, promulgated at the same time, is a direction that aliens entitled to exclusion hearings under Part 236 who apply for admission at airports or seaports will have any concomitant asylum application considered by the immigration judge during the exclusion hearing process. New 8 C.F.R. 236.3(a)(2) states an exception for the alien seeking admission to the United States at the land border. He is not to be processed by the immigration judge as to his asylum request; instead he is to be processed as prescribed by section 108.1; *i.e.,* by referral to the nearest American Consul. 44 Fed. Reg. 21259; April 10, 1979 (effective May 10, 1979).

It is my opinion that the literal application of the rule regarding asylum requesters applying for admission at the land border was never intended for and should not be applied to a citizen of an Asian country who has gone from the United States to Mexico for 2 hours and has no privilege to sojourn longer in Mexico (especially after his difficulties with United States immigration authorities become known). This would not happen at the Canadian border. Under Section III, B, 2 of the Reciprocal Arrangement of 1949, as amended (INS Operations Instructions, Appendix to O.I. 243.1(c)(2)), the Canadian authorities would formally order the the alien excluded and deported to the United States, the United States Government would be obliged to let the alien come back under a parole order, and he then would have section 236 exclusion proceedings as the forum where he could prosecute his asylum request. 8 C.F.R. 108.1. It never can have been intended thus to discriminate against an alien who is not a citizen or resident of Mexico, who strayed momentarily across the United States border into Mexico, and who has no right to remain there while presenting an asylum application to the American Consul.

The regulations have not been interpreted reasonably and correctly in accordance with fairness and their, to me, manifest purpose. I would remand this case to the immigration judge with a direction to entertain an asylum application.